IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEVEN RICHMOND; and <br> COMMONWEALTH SECOND AMENDMENT, INC <br>     Plaintiffs <br><br> v. <br><br> MICHAEL PERAINO, Chief of the Town of Hingham <br> Department of Police; <br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) Docket No. 15-cv-10933 <br> ) <br> ) <br> ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Now Come the plaintiffs, Steven Richmond and Commonwealth Second Amendment, Inc., by and through undersigned counsel, and submit their Memorandum in opposition to Defendant Michael Peraino's Motion to Dismiss.

## PRELIMINARY STATEMENT

The defendant's Motion to Dismiss should be denied, as the plaintiffs have alleged facts sufficient to establish a justiciable issue, their right to relief, and standing to claim such relief.[1] The plaintiff, Steven Richmond, has adequately pleaded two separate and distinct claims: 1) Declaratory Judgment and Injunctive Relief under 28 U.S.C. §§ 2201 and 2202, and 2) 42 U.S.C. § 1983.

---

[1] Defendant's Motion to Dismiss is based on Fed. Rule Civ. P. 12(b)(6). Neither Defendant nor Plaintiff have utilized factual matters beyond the pleadings in their filings. Accordingly, the Court should not consider Defendant's Motion as one for summary judgment pursuant to Fed. Rule Civ. P. 12(d), and Plaintiff would object to these filings being considered as summary judgment filings. If, however, the Court intends to consider the matter as one for summary judgment, Plaintiff specifically prays that he be given a reasonable opportunity to present all the material that is pertinent to the motion, as required by Rule 12(d).

1

Defendant's Motion to Dismiss is makes two assertions as the basis for dismissal: 1) that Chief of Police of the City of Worcester v. Holden, 470 Mass. 845 (2015) precludes Plaintiff from asserting a Second Amendment right based on denial of his application for an License to Carry-A ("LTC-A"); and 2) that Defendant "did exactly as he was required under Massachusetts law[,] [t]hus the plaintiff's complaint fails to state a claim." Defendant's Memorandum in Support of Motion to Dismiss, at p. 1. As set forth more fully below, however, Defendant's reliance on Holden is misplaced because that case by its clear and unequivocal language addresses only whether there is a Second Amendment right to a LTC-A for the purposes of carrying a firearm *outside of the home* in a condition of defensive readiness *for the purpose of self-defense* and whether the suitable person language governing discretionary issuance of that public use license comports with constitutional boundaries. Plaintiff's Complaint makes no claim whatsoever of a constitutional right to carry a firearm in a defensive readiness condition outside of the home for self-defense, nor is it a challenge to the denial based on discretionary factors, such as the suitable person standard, as Defendants have made perfectly clear. On the contrary, Plaintiff only asserts in the present matter that his Second Amendment right to purchase and possess a handgun for self-defense purposes *inside the home* has been infringed by the statutory bar found in M.G.L. c. 140 § 131(d)(i)(e) which prevents him from obtaining a private possession license good, for instance, for possession in one's home. Massachusetts law provides for Restrictions on an LTC (an inverse form of endorsements) where the license is scoped to be valid for a particular purpose, such as sporting, target or hunting, no concealed carry, etc. An LTC with no restrictions allows for the license to be valid for all lawful purposes, such as carry outside the home. See Glidden, Ronald, *Law Enforcement Guide to Firearms Law*, 22nd Edition, at pg. 200 (2013). As Massachusetts law

presently dictates, qualification for the LTC-A is the only lawful means to purchase and possess a handgun solely *inside the home* in Massachusetts.[2] Further, as set forth below, the defendant, as Chief of Police for the Town of Hingham, is the sole designated Licensing Authority for the residents of Hingham, and therefore is the proper defendant for the unconstitutional denial of Plaintiff's LTC-A application.

## BACKGROUND

Defendant enforces M.G.L. c. 140 § 131(d)(i)(e), which is part of the Massachusetts gun control licensing scheme. Plaintiff, Steven Richmond ("Richmond"), applied to Defendant for a LTC-A so that he could exercise his fundamental Second Amendment right to purchase, possess and carry a handgun *inside his home* for self-defense. Defendant, who is the proper duly authorized gun Licensing Authority for Mr. Richmond's application, denied Mr. Richmond the LTC, citing M.G.L. c. 140 § 131(d)(i)(e) as the reason for denial. M.G.L. c.140 §131(d)(i)(e) imposes a statutory lifetime ban preventing Richmond from ever possessing a handgun in Massachusetts, even in his own home.

In 1975, Plaintiff Richmond pleaded guilty without a lawyer to one count of the misdemeanor offense of simple Possession of Marijuana in the state of Florida. As a result, a guilty was entered and a $252 fine was imposed. Other than the non-violent misdemeanor conviction forty years ago Plaintiff has no other disqualifying criminal infractions, and has been a law-abiding and responsible person. He is eligible to possess a handgun in his home under the laws of the United States, as well as the state of Florida if he presently resided there.

Plaintiff has alleged in the Verified Complaint that as-applied to him, Defendant's actions

---

[2] Prior to the enactment of M.G.L. Chapter 284, an Act Relative to the Reduction of Gun Violence, effective January 2015, a Massachusetts resident could obtain a License to Carry-B ("LTC-B") that would enable possession of a handgun inside the home. The same statutory disqualifier in the present matter would have been a statutory disqualifier for a LTC-B, as well. The Massachusetts gun licensing scheme no longer has a LTC-B license option.

3

in enforcing the lifetime handgun ban and denying his application for a private possession license pursuant to M.G.L. c. 140 § 131(d)(i)(e) violates his rights under the Second and Fourteenth Amendments to the U.S. Constitution.

**STANDARD OF REVIEW**

A Motion to Dismiss based on the pleadings pursuant to Rule 12(b) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although "detailed factual allegations" are not necessary, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555,127 S.Ct. 1955,167 L.Ed.2d 929 (2007), the complaint must "contain sufficient factual matter... to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662.129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570 (1955).

**ARGUMENT**

**1) Plaintiff Sufficiently States A Claim That His Second Amendment Right To Possess A Handgun *Inside His Home* For Self-Defense Purposes Has Been Infringed.**

As specifically stated by the U.S. Supreme Court in District of Columbia v. Heller, 128 S.Ct. 2783 (2008) "we hold that the District's ban on *handgun possession* in the home violates the Second Amendment. . .. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must . . . issue him a license to carry [a handgun] in the home." Id. (emphasis added). On June 28, 2010, the Supreme Court of the United States held in McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), that the Second Amendment right to

4

keep and bear arms restrains state and local governments through incorporation in the Fourteenth Amendment.

Plaintiff's Complaint clearly states that Plaintiff Richmond seeks to lawfully purchase and possess a handgun only "for use *in his home for self-defense*." Plaintiff's Complaint at ¶ 27 (emphasis added). Further, Plaintiff has alleged that he has been denied his right to purchase and possess a handgun "*in his home for self-defense* as protected by the Second and Fourteenth Amendments to the U.S. Constitution," and that the Licensing Authority's actions have denied Plaintiff his right to possess and purchase a handgun for use "in his home for self-defense" as protected by the Second and Fourteenth Amendments to the U.S. Constitution. Id. at ¶¶27 & 28.

Defendant informed Plaintiff that he could not legally possess a handgun in his home with only a Firearms Identification Card ("FID") and not a LTC-A, which is consistent with the Massachusetts gun control licensing scheme. Id. at ¶26. Relevant to the present case, "As used in [Chapter 140] sections 122 to 131P, inclusive, … 'Firearm' [is] a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches. . .." M.G.L. c. 140 § 121; see also Massachusetts Model Jury Instruction 7.600 and cases cited therein. M.G.L. c. 140 §131(a) states that a LTC-A shall entitle a holder thereof to . . . possess and carry: (i) *firearms* [i.e., handguns]… ." Id. Importantly, M.G.L. c. 140 § 129B(6), mandates that a firearm identification card ("FID") "shall not entitle a holder thereof to *possess*: (i) a *large capacity firearm* . . . or (ii) a *non-large capacity firearm.*" Id. (emphasis added). In short, the FID by itself is not sufficient to lawfully possess a handgun in any place in Massachusetts, including one's home. Defendant's refusal to issue a LTC-A to a person who is "not disqualified from exercise of the Second Amendment," such as Plaintiff Richmond, for the limited purpose of

"handgun possession in the home" directly contradicts the Heller holding. District of Columbia v. Heller, 128 S.Ct. 2783 (2008). Accordingly, as in Heller, the Commonwealth must "issue him a license to carry [a handgun] in the home." Id.

In his Motion to Dismiss, Defendant plucks language out of context from a recent SJC case, Chief of Police of the City of Worcester v. Holden, 470 Mass. 845 (2015), to argue that "the denial of a Class A license to carry a concealed firearm, or the revocation or suspension of a Class A license, falls outside the Second Amendment and is subject only to rational basis analysis, as a matter of substantive due process." Plaintiff's Memorandum in Support of Motion to Dismiss, at p 1-2 (citing Holden at 853). What can't be stressed enough, however, (and what is absent from Defendant's argument), is that Holden was not in any way addressing the aspects of a Class A License to Carry as it relates to private possession of a handgun *inside the home* for self-defense.

In Holden, the SJC considered an issue that has generated vibrant debate across the country, to wit, the extent to which the Second Amendment to the U.S. Constitution provides constitutional protection to lawful armed self-defense outside the home.[3] The issue has been addressed to various degrees by several of the federal circuits, but remains a vigorously litigated issue. See, e.g., Peruta v. County of San Diego, 742 F. 3d 1144 (9th Cir. 2014); Moore v. Madigan, 702 F.3d 933 (7th. Cir. 2012); Ezell v. City of Chicago, 651 F.3d 684, 704 (7th Cir. 2011); Kachalsky v. County of Westchester, 701 F.3d 81 (2012); Drake v. Filko, 724 F.3d 426, 444 (3d Cir. 2013). In Holden, the SJC framed Holden's as-applied challenge as follows:

---

[3] In District of Columbia v. Heller, 128 S.Ct. 2783 (2008), the United States Supreme Court determined that the Second Amendment enshrined a right to at least possess a handgun inside the home for self-defense, the place where the "need for defense of self, family, and property is most acute."

> Holden argues that the Second Amendment secures for him the right *to carry a handgun for self-defense **outside** the home*, and that this right cannot be made subject to a determination by the chief that he is a suitable person to carry a handgun. He contends that the "suitable person" standard in G.L. c. 140, §131(d) and (f), violates the Second Amendment, and that it violates constitutional vagueness. Chief of Police of the City of Worcester v. Holden, 470 Mass. 845, 850-51 (2015)(emphasis added).

In the present case, however, Plaintiff does not challenge the constitutionality of a "suitable person" standard and does not assert a right to carry a handgun for self-defense *outside the home*. The present case before the Court is a "statutory" denial under §131(d)(i)(e), and not a "suitable person" denial, and it seeks only to cease infringement on the well-established right to possess a handgun *inside the home* where the "need for defense of self, family, and property is most acute."

Additional language used throughout the Holden opinion makes clear that the SJC was not addressing the aspects of the LTC-A required for possession inside the home, but was only addressing the "suitable person" standard as applied to Holden's assertion of a Second Amendment right *to carry a handgun for self-defense outside the home*. For example, the SJC set forth the following language in rejecting Holden's argument that his right to armed self-defense entitled him to carry a concealed weapon outside his home for the purpose of self-defense:

> Holden acknowledges that the Supreme Court also said in Heller that the "need for defense of self, family, and property is most acute" in the home, id. at 628, *but he maintains nevertheless that the right of self-defense is the core holding of Heller. He reasons that nothing in Heller suggests that the right to bear arms for self-defense is limited to the home*. Relying on Moore v. Madigan, 702 F.3d 933, 942 (7th Cir. 2013), *Holden maintains that the right to keep and bear arms to defend oneself is at least as important outside the home as it is inside the home*. His argument culminates in the following statement: "By noting that restrictions on carrying firearms 'in sensitive places such as schools and government buildings' . . . were 'presumptively lawful' under the Second Amendment . . . *the Court at least suggested that restrictions on carrying firearms outside the home in less 'sensitive' places would violate the right to keep and bear arms,"* quoting Heller, supra at 626, 627 n.26. Holden at 851-52 (emphasis added).

> *The Court did not say or imply, as Holden argues, that the right of self-defense is as great outside the home as it is inside the home*. Indeed, the Court expressed something to the contrary. It said "the need for defense of self, family, and property is most acute" in the home. Id. at 628. The United States Court of Appeals for the First Circuit has observed that, with respect to this language from Heller, "[c]ourts have consistently recognized that Heller established that the possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment." Hightower v. Boston, 693 F.3d 61, 72 (1st Cir. 2012). Holden at 852 (emphasis added).
>
> Conspicuously absent from Holden's argument is the Supreme Court's inclusion of *"prohibitions on carrying concealed weapons"* among the "tools" available to combat gun violence. Heller, 554 U.S. at 626, 636. *This particular prohibition applies to the possession of firearms outside the home*. Holden at 852 (emphasis added).
>
> Because a prohibition against *carrying concealed weapons* is presumptively lawful, it follows that licensing the carrying of such weapons, a less restrictive measure, also must be presumptively lawful. See id. at 74. *"Presumptively lawful" prohibitions and regulations do not burden conduct protected by the Second Amendment. As such, they fall outside the scope of the Second Amendment and are not subject to heightened scrutiny*. See Commonwealth v. McGowan, 464 Mass. 232, 239, 244 (2013). **For these reasons**, *we conclude that the denial of a Class A license to carry a concealed firearm, or the revocation or suspension of a Class A license, falls outside the Second Amendment* and is subject only to rational basis analysis, as a matter of substantive due process. Holden at 853 (emphasis added).

As is established and clearly stated by the SJC in this language, the Court was referring only to the right to carry a weapon concealed *outside the home* when it stated that denial of a LTC-A falls outside the Second Amendment. Again, though, in the present case, Plaintiff seeks only the required LTC-A for the purpose of possessing a handgun in his home, what is clearly a "core" protected right and not "presumptively lawful prohibition." This Second Amendment right to possession of a handgun inside the home has been specifically articulated by the U.S. Supreme Court, and has been acknowledge by the First Circuit Court of Appeals and the Massachusetts Supreme Judicial Court. The Massachusetts gun licensing scheme, as set forth above and in even more detail in Plaintiff's Verified Complaint, states that qualification for a

8

LTC-A is necessary to purchase and privately possess a handgun even in one's home in Massachusetts. Accordingly, Defendant's denial of that LTC-A for at least the limited purpose of purchase and possession in the home for self-defense is a violation of the Second and Fourteenth Amendments to the U.S. Constitution and Defendant's Motion to Dismiss should be Denied.

### 2) Defendant Peraino Was The Designated Firearms Licensing Officer For The Town Of Hingham And Is Properly Named As The State Actor In The Present Matter.

In the present matter, the Licensing Authority, defined by Massachusetts state statute as Chief Peraino, is sued in this Ex Parte Young, 209 U.S. 123 (1908) action in his official capacity for declaratory relief in the role as a state actor. M.G.L. c. 140 § 131 and M.G.L. c. 140 § 121 place ultimate and final authority for licensing of firearms for those residing in Hingham, or in any other city or town in the Commonwealth, on "the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them." Id. In the present case, the Verified Complaint alleges that Defendant Police Chief Peraino, as Licensing Authority, acted under the color of M.G.L. c. 140, § 131 to deny Plaintiff Richmond of his federal constitutional right to keep and bear arms under the Second Amendment. See, generally, Verified Complaint. The Verified Complaint seeks declaratory judgment and prospective injunctive relief and states a valid claim against Defendant Peraino under 42 U.S.C. § 1983. Because Defendant Peraino is the Licensing Authority with the sole authority under Massachusetts law to enforce the gun licensing statute by issuing or denying the license sought by Richmond, Plaintiff has properly named Defendant as a party to his Declaratory Judgment action as Defendant is the only party over whom an injunctive order can hold any power to right the constitutional wrong alleged.

It is well established that a local government or county employee can act as an arm of the state. See, e.g., *McMillian v. Alabama*, 117 S.Ct. 1734 (1997). As stated by the Supreme Court in *McMillian,* a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an *agent*. *Id.* at 1737 Note 2 (emphasis added). In determining whether a local official is acting as a local or state agent, the Court determined that

> Our inquiry is guided by two principals. **First**, the question is not whether [the officer] acts for Alabama or Monroe County in some categorical, "all or nothing" manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue. . .. Thus, we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether [the officer] represents the State or the county when he acts in a law enforcement capacity. . .. **Second**, our inquiry is dependent on an analysis of state law. This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law. *Id.* at 1737.

Using the Court's two delineated principals, an analysis of the Massachusetts gun control licensing scheme demonstrates that a Licensing Authority is an agent of the Commonwealth when engaging in licensing activities where the state has not granted any discretion to set local policy. As Defendant has pointed out, the prohibition blocking the exercise of Plaintiffs Second Amendment rights is statutory in nature, so the actions here are attributable to the state and agent Peraino's role in enforcing the state licensing scheme. "Licensing Authority" is specifically defined in the gun licensing statutes as either "the chief of police or the board or officer having control of the police in a city or town. . .." G.L. c. 140 § 121. Massachusetts state law directly empowers "Licensing Authorities" to issue or deny an applicant's license based on statutory or

10

other disqualifications, as well as discretionary reasons. See, e.g., G.L. c. 140 § 131, 131A. In Massachusetts, a person seeking a LTC-A must file an application with a Licensing Authority, which in turn determines whether the applicant is disqualified by statute from obtaining the license. See M.G.L. c.140 § 131(d) and Chardin v. Police Comm'r of Boston, 465 Mass. 314, 395 (2013). The Massachusetts Colonel of State Police is not a "Licensing Authority" under the Massachusetts gun control licensing scheme. Although the Colonel is granted similar firearms licensing powers in the gun control licensing statute, he is not a "Licensing Authority." The Licensing Authority's powers do not flow from the Colonel or from the Town in which they are the Authority, but directly from the state's legislative and police power through its licensing statute. Id.

The Commonwealth's Executive Office of Public Safety ("EOPS") also acknowledges that local Licensing Authorities are the entity that determines if a resident applicant should obtain a state gun license. EOPS specifically directs residents of Massachusetts to their town's police chief, and not the Colonel of State Police, to apply for and "obtain" an LTC or FID. The official EOPS website directs residents as follows:

> **Q. I am a resident of Massachusetts. How do I obtain a firearms license?**
> **A.** A license to carry (LTC) issued pursuant to G.L. c. 140, §131 or a firearms identification card (FID) issued pursuant to G.L. c. 140, §129B may be ***obtained*** from the police department where you reside or have a place of business (***your licensing authority***). Applications for a LTC or FID are available under 'Firearms Forms and Applications.' *EOPS Official Website*, printout attached hereto as Ex. A.[4] (emphasis added).

Further, the Forms section of the site provides a blank Application for a FID or LTC with the command that,

> Firearms Identification (FID) Card or License To Carry Firearms (LTC) Application 🗎 file size 1MB

---
[4] The website is at http://www.mass.gov/eopss/firearms-reg-and-laws/frb/frequently-asked-questions.html

> Massachusetts Residents should use this form to apply for or renew a LTC or FID card at their local police department. *EOPS Official Website*.[5]

Only non-residents seeking a temporary LTC while in Massachusetts, which is not the issue in the present case, are directed to seek a gun license through the Colonel of State Police. Even in this limited situation, though, the Colonel has designated even that authority to another entity :

> **Q: Can a nonresident obtain a permit to carry a weapon in Massachusetts?**
> **A:** MGL c. 140 § 131F allows the Colonel of the State Police or his designee to issue a temporary LTC to nonresidents or persons not falling within the jurisdiction of a local licensing authority. Currently, *the Firearms Record Bureau (FRB) has been designated to issue permits to nonresidents*. The phone number of the FRB is (617) 660-4780. *EOPS Website*.

Importantly, when a resident's license application is submitted by a Licensing Authority to the Colonel of State Police, the Colonel's statutory role is merely a fact-finding one. G.L. c. 140 ¶ 131(e). The Colonel is to search the databases and then merely "*advise* the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth *and whether there is reason to believe* that the applicant is disqualified for any of the foregoing reasons from possessing a license to carry or possess firearms." Id. (emphasis added). After receiving the factual information from the Colonel, it is the *"licensing authority* [that] shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing." *Id*. (emphasis added).

---

[5] The website is found at http://www.mass.gov/eopss/firearms-reg-and-laws/frb/firearms-forms-and-applications.html

As is evident from the above, local Licensing Authorities, i.e. the Chief of Police, are the Commonwealth's designated arm for accepting, processing, and issuing or denying firearms licenses. The Licensing Authority is a direct creation of state statute, not a local bylaw, and derives its decision making and enforcement authority directly from the state legislative and police power. Accordingly, as established by Ex Parte Young, 209 U.S. 123 (1908), Plaintiff's Complaint properly names Chief Peraino in his Official Capacity for declaratory relief in his role as a state actor enforcing an unconstitutional state statute as applied to Plaintiff.

## CONCLUSION

In conclusion, Plaintiff has properly pleaded claims for Declaratory Judgment and prospective injunctive relief under 42 U.S.C. § 1983. Specifically, Plaintiff has named the defined Licensing Authority for their enforcement of an unconstitutional state statute, § 131(d)(i)(e), and has pleaded a violation of his Second and Fourteenth Amendment rights for the state actor completely barring him from possessing a handgun *in his home* for the purpose of self-defense.

Based on the foregoing analysis, Defendant's Motion to Dismiss should be DENIED.

> Plaintiff Steven Richmond
> By His Attorney,
> */s/ Jeffrey T. Scrimo*
> Jeffrey T. Scrimo
> Lynch Scrimo─Attorneys
> PO Box 1787
> Lenox, MA 01240
> BBO# 649864
> Jeff@LenoxAttorney.com

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and served via email on this April 14, 2015.

<u>*/s/ Jeffrey T. Scrimo*</u>