IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEVEN RICHMOND; and ) | |
| COMMONWEALTH SECOND AMENDMENT, INC ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) Docket No.  1:15-cv-10933 | |
| STEVEN PERAINO, Chief of the Town of Hingham ) | |
| Department of Police; ) | |
| Defendant ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEY FEES, EXPENSES AND COSTS**

Defendant filed his Opposition to Plaintiff's Motion for Attorney Fees and Costs based upon two propositions: 1) that Defendant could not be liable under *Monell v. New York City Dep't of Civil Services* because it was a municipality simply enforcing a state law, and 2) because plaintiff "did not use the relatively quick and inexpensive appeal to the Hingham District Court that was his right."  Both of these propositions are misplaced.  First, Defendant Peraino was not sued for his actions as a municipal employee, but was sued in the Ex Parte Young action as the designated state agent and licensing authority with the authority to make the licensing decision on behalf of the state.  Second, as has previously been outlined by this Court in the nearly identical case of *Wesson, et al v. Salisbury, et al*, Plaintiff was not required to file an appeal with the state District Court, and had he done so he would have likely deprived this federal District Court of jurisdiction in this matter.

## I. ARGUMENT

**A) Defendant Peraino Was A State Actor in the Present Matter.**

In the present matter, Plaintiff filed suit against the Commonwealth's designated Firearms Licensing Authority, defined by Massachusetts state statute as Defendant, Chief

1

Peraino.  Peraino is sued in this Ex Parte Young, 209 U.S. 123 (1908) action in an official capacity for declaratory relief in the role as a *state actor*, not as a municipal employee.  This is an odd situation where Defendant municipality is arguing against Plaintiff's insistence that the Licensing Authority Chief of Police is acting as an arm of the state and not of the Town, thereby rendering the state responsible for his actions.[2]

It is well established that a local government or county employee can act as an arm of the state.  See, e.g., *McMillian v. Alabama*, 117 S.Ct. 1734 (1997).  As stated by the Supreme Court in *McMillian,* a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an *agent*.  *Id.* at 1737 Note 2 (emphasis added).  In determining whether a local official is acting as a local or state agent, the Court determined that

> Our inquiry is guided by two principals. **First**, the question is not whether [the officer] acts for Alabama or Monroe County in some categorical, "all or nothing" manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue. . .. Thus, we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether [the officer] represents the State or the county when he acts in a law enforcement capacity. . .. **Second**, our inquiry is dependent on an analysis of state law.  This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.  *Id.* at 1737.

Using the paradigm of the Court's two delineated principals, an analysis of the

---

[2] The unique structure of the Massachusetts gun licensing scheme certainly raises interesting questions of indemnification between municipalities and the Commonwealth.  However, it is unclear whether Natick Defendants filed such a claim for indemnification from the Commonwealth in state court related to the present matter.

2

Massachusetts gun licensing scheme demonstrates that a Licensing Authority is an agent of the Commonwealth when engaging in gun licensing activities where the state has not granted any discretion to set local policy.  As Defendant has pointed out, the prohibition blocking the exercise of Plaintiffs Second Amendment rights is statutory in nature, so the actions here are attributable to the state and agent Peraino's role in making the state's licensing decision and carrying out the state's licensing scheme. "Licensing Authority" is specifically defined in the gun licensing statutes as either "the chief of police or the board or officer having control of the police in a city or town. . .." G.L. c. 140 § 121.  Massachusetts state law directly empowers "Licensing Authorities" to issue or deny an applicant's license based on statutory or other disqualifications, as well as discretionary reasons.  See, e.g., G.L. c. 140 § 131, 131A.  As the Massachusetts Attorney General's office correctly stated, "a person seeking a Class A or B license must file an application with *a Licensing Authority*, *which in turn determines* whether the applicant is disqualified by statute from obtaining the license." *See Memorandum of the Commonwealth of Massachusetts In Response to Plaintiffs' Motion for Summary Judgment*, at p. 3, (*from the case Wesson, et al, v. Salisbury, et al but was attached in the present case to Commonwealth's Notice to the Court that it would not intervene —citing G.L. c. 131(d) and Chardin v. Police Comm'r of Boston, 465 Mass. 314, 395(2013)(emphasis added)*).  The Massachusetts Colonel of State Police is not a "Licensing Authority" under the Massachusetts gun licensing scheme.  Although the Colonel is granted similar firearms licensing powers in the gun licensing statute, he is not a "Licensing Authority."  The Licensing Authority's powers do not flow from the Colonel or from the Town in which they are the Authority, but directly from the state's legislative and police power through its licensing statute.  *Id.*

  The Commonwealth's Executive Office of Public Safety ("EOPS") also acknowledges

that local police chiefs acting as Licensing Authorities are the entity that determines if a resident applicant should obtain a state gun license.  EOPS specifically directs residents of Massachusetts to their town's police chief, and not the Colonel of State Police, to apply for and "obtain" an LTC or FID.  The official EOPS website directs residents as follows:

> **Q. I am a resident of Massachusetts. How do I obtain a firearms license?**
> **A.** A license to carry (LTC) issued pursuant to G.L. c. 140, §131 or a firearms identification card (FID) issued pursuant to G.L. c. 140, §129B may be *obtained* from the police department where you reside or have a place of business (*your licensing authority*). Applications for a LTC or FID are available under 'Firearms Forms and Applications.'  *EOPS Official Website*, printout attached hereto as Ex. A.[4] (emphasis added).

Further, the Forms section of the site provides a blank Application for a FID or LTC with the command that,

> Firearms Identification (FID) Card or License To Carry Firearms (LTC) Application  file size 1MB
> Massachusetts Residents should use this form to apply for or renew a LTC or FID card at their local police department.  *EOPS Official Website*, printout attached hereto as Ex. B.[5]

The Official Website of the Massachusetts Colonel of State Police, itself a subpage of EOPS, has no internal links whatsoever to any firearms licensing forms or information.[6]  The only link to such information on the Colonel's page is the EOPS's general link to "Firearms Registration & Laws."  That link brings a citizen user seeking licensing information to the EOPS information cited above.  At no time does any of the EOPS firearms related information or forms direct residents of the Commonwealth to apply to the Colonel of State Police for a firearms license.  Indeed, the LTC application itself instructs applicants in bold red lettering to "Submit this form and direct any questions to your local police department."  *See LTC application*, attached hereto

---

[4] The website is at http://www.mass.gov/eopss/firearms-reg-and-laws/frb/frequently-asked-questions.html
[5] The website is found at http://www.mass.gov/eopss/firearms-reg-and-laws/frb/firearms-forms-and-applications.html
[6] The Colonel's internal EOPS site is found at http://www.mass.gov/eopss/agencies/msp/#.U027w6bD-Uk

as Ex. .[7]  Only non-residents seeking a temporary LTC while in Massachusetts, which is not the issue in the present case, are directed to seek a gun license through the Colonel.  Even in this limited situation, though, the Colonel has designated even that authority to another entity :

> **Q: Can a nonresident obtain a permit to carry a weapon in Massachusetts?**
> **A:** MGL c. 140 § 131F  allows the Colonel of the State Police or his designee to issue a temporary LTC to nonresidents or persons not falling within the jurisdiction of a local licensing authority.  Currently, ***the Firearms Record Bureau (FRB) has been designated to issue permits to nonresidents***. The phone number of the FRB is (617) 660-4780.  *EOPS Website*, attached as Ex. A (emphasis added).

Importantly, when a resident's license application is submitted from a Licensing Authority to the Colonel of State Police as part of the application process, the Colonel's statutory role is merely a fact-finding one.  *See G.L. c. 140 ¶ 131(e)*.  The Colonel is to search the databases and then merely "*advise* the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth ***and whether there is reason to believe*** that the applicant is disqualified for any of the foregoing reasons from possessing a license to carry or possess firearms."  Id. (emphasis added).  After receiving the factual information from the Colonel, it is the ***"licensing authority*** [that] shall, within 40 days from the date of application, ***either approve the application*** and issue the license ***or deny the application*** and notify the applicant of the reason for such denial in writing."  *Id*. (emphasis added).  Nor does a resident appeal a denial of a gun license by a local Licensing Authority to the Colonel of State Police for agency review, but the statutory appeal goes directly to the District Court.  *See G.L. c. 140, § 131*.

---

[7] Found at http://www.mass.gov/eopss/docs/chsb/firearms/updated-ltc-fid-card-app-revised-05-19-15.pdf

As is evident from the above, local Licensing Authorities, i.e. the Chief of Police, are the Commonwealth's designated arm for both accepting and processing firearms applications and, critically, issuing or denying firearms licenses.  The Licensing Authority is a direct creation of state statute, not a local bylaw, and the Licensing Authority derives his decision making and enforcement authority directly from the state legislative and police power.

**B) Defendant's Argument That Plaintiff Should Not Be Entitled To Attorney Fees Because He Did Not Appeal The Denial To The State District Court Is Without Merit.**

Defendant argues in his Opposition that Plaintiff should not be entitled to Attorney's Fees because he failed to file an administrative appeal in the state district court.  First, this proposition was soundly discredited by the federal district court in *Wesson, et al v. Salisbury, et al,*.  As noted in that Court's Memorandum and Order on Plaintiff's Motion for Summary Judgment,

> Although neither Wesson nor Woods sought relief in the state court, under the circumstances of this case, neither is required to exhaust his administrative remedies before seeking relief under 42 U.S.C. § 1983. In fact, had plaintiffs sought relief in the state courts, it is unlikely that this court would have the jurisdiction to intervene.  As courts of original jurisdiction, federal district courts sitting in diversity jurisdiction do not have appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals. *Wesson, et al v. Salisbury, et al, docket 13-10469-RGS*, at p. 6-7 note 4 (Ma. Fed. District Ct., Judge Richard Stearns presiding)(internal citations and quotations omitted).

As stated by Judge Stearns, Plaintiff was not required to risk depriving the federal court of its jurisdiction by proceeding through a state appellate procedure instead of utilizing the federal court's original jurisdiction.  This is especially true where the state court or other agencies in the present case had no statutory authority to overturn the denial.  Indeed, in the present case, neither the state District Court nor the Firearms Review Board had any authority to overturn the constitutionally deficient denial of Plaintiff's firearms rights.  The District Court is statutorily

limited in its review of firearms licensing decisions and can only order the license to issue if "there was no reasonable ground for denying, suspending, revoking or restricting the license and . . . the petitioner is not prohibited by law from possessing a license." *M.G.L. c. 140 ¶ 131(f)*. In the present matter, although it was unconstitutional as applied, there was a statute prohibiting Plaintiff from possessing the license, thereby rendering a state District Court appeal fruitless.

Additionally, although Defendant does not cite Plaintiff's lack of an appeal through the Firearms Licensing Review Board ("FLRB" or "Board") as another reason to deny Plaintiff his attorney's fees, Plaintiff addresses this potential argument for the benefit of the Court. The FLRB statute specifically denies the Board jurisdiction to reconsider or waive convictions under "subclauses . . .(e). .of clause (i) . . .of paragraph (d) of section 131." G.L. c. 140 § 130B(d).  This is the exact statute that has been at the core of Plaintiff's case since the beginning. Accordingly, the FLRB also has no jurisdiction to review or waive G.L. c. 140 § 131(d)(i)(e) disqualifications in its firearms license reviews.

## II. CONCLUSION

Based upon the above reasons, Plaintiff respectfully requests that this Honorable Court award Plaintiff his Attorney's Fees and Costs in the present matter.

        Plaintiff, By His Attorney,
       */s/ Jeffrey T. Scrimo*
        Jeffrey T. Scrimo
        Lynch Scrimo─Attorneys
        PO Box 1787
        Lenox, MA 01240
        BBO# 649864
        Jeff@LenoxAttorney.com

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and served via email on this 15 of October, 2015.

*/s/ Jeffrey T. Scrimo*